[Civ. No. 9314. Third Dist. Nov. 14, 1958.]

NANCY CROSS, Appellant, v. JOHN L. TUSTIN, Individually and as Personnel Director of Santa Clara County, et al., Respondents.

Nancy Cross, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Willard A. Shank, Deputy Attorney General, Spencer M. Williams, County Counsel (Santa Clara), and Joan A. Symon, Deputy County Counsel, for Respondents.

VAN DYKE, P. J.—This appeal was taken from a judgment of dismissal after the sustaining of demurrers without leave to amend.

The following is a condensation of the first complaint filed herein: Plaintiff is a personnel examiner and, by training, also a lawyer, though not a member of the State Bar. John L. Tustin is personnel director and secretary of the Civil Service Commission of Santa Clara County, and, with respect to the acts complained of, was an agent and servant of said commission, acting within the scope of his employment. John F. Fisher and James R. Bell are executive officer and assistant executive officer, respectively, of the State Personnel Board and the acts by them complained of were done while they were acting as agents and servants of the board within the scope of their employment. Horace Cureton, George Prindiville, Justin W. Byers, J. B. Robinson and James E. Dunn are members of the Civil Service Commission of Santa Clara County. Ford A. Chatters, Emery E. Olson, Wilmer W. Morse, Robert D. Gray and Benjamin E. Mallary are members of the State Personnel Board. Plaintiff applied for the position of Associate Personnel Examiner in the state civil service, passed a written examination therefor, and thereafter appeared and took the oral qualifications appraisal test. Several years thereafter plaintiff applied for the position of Junior Counsel in the State Civil Service, passed the written examination therefor, but failed the oral appraisal test. Intermediate her application and the first examination, Fisher wrote to Tustin and inquired concerning the reasons for

plaintiff's separation from her position with Santa Clara County. Tustin replied that she had been employed as a Senior Personnel Technician with a probational status; that she had been appointed December 6, 1948, and had been released March 2, 1949; that their rules prohibited giving reasons for the release of a probational employee and hence he was unable to give the information requested. He said, however, that the release had been fully justified. This letter contained false and defamatory statements about plaintiff made maliciously with the intent secretly and fraudulently to prejudice and defeat her opportunities for appointment for any position in the state civil service in that it was, and was understood to be, a charge that plaintiff had been guilty of misconduct and had been discharged for that reason. Tustin, Fisher and Bell were charged with publishing this letter. The letter, said plaintiff, exposed her to hatred, contempt, ridicule and obloquy, caused her to be shunned and avoided, injured her in her occupation and further violated section 19680 of the Government Code. When Fisher and Bell published the letter, they accompanied it by memorandum of their own making to the effect that although plaintiff was being admitted to the written examination test she could and should be disqualified on oral examination by the qualifications appraisal board. They so stamped and tagged the application form of plaintiff as to bring the letter to the attention of oral examiners. As a consequence of the letter and memorandum, plaintiff, on oral appraisal of her qualifications for the position of Associate Personnel Examiner, was rated only five points above passing, namely, 75 per cent. Had it not been for said publication, plaintiff would have been appointed to the position she sought, but due thereto plaintiff has never been able to obtain the employment she asks for. As a further result of the publications, plaintiff, on oral appraisal of her qualifications for the position of Junior Counsel, was rated five points below passing, that is, 65 per cent, and hence her name could not and did not appear on the eligible list. By reason of the foregoing plaintiff had been specially damaged in the sum of $32,000 and generally damaged in the sum of $43,000. She sought exemplary damages of $25,000.

Shortly after filing her first complaint, plaintiff voluntarily amended the same by alleging that the state board had denied an appeal. Thereafter, she voluntarily filed a second amendment to her complaint, complaining that the State Personnel

Board and Mr. Fisher had refused to make available to her copies of the transcripts of various hearings that she had been given. To the pleading as amended demurrers both general and special were interposed. After sustaining the demurrers the court granted leave to amend. Plaintiff did amend by adding a great deal of new matter in amplification of her pleading. Demurrers were again interposed, sustained and further leave to amend was given. Thereupon plaintiff further amended. Demurrers were again interposed and this time were sustained without leave to amend.

We shall first consider the general demurrers interposed to appellant's pleading. In support of their general demurrers respondents argue that they were all sued in their official capacities and that as such they were immune under the doctrine of sovereign immunity. It appears that after it had been pointed out by demurrer that all of the defendants were public employees either of Santa Clara County or of the State of California and that as to all it was alleged that what they had done they had done while acting in the scope of their employment, plaintiff, in one of her amendments, added the following allegations: As to Tustin, that in the acts complained of he was acting without lawful authority; as to Fisher and Bell and the board members that in the acts complained of they were acting without lawful authority and under color of state authority. As to all the foregoing plaintiff added that ''By the expression 'scope of employment,' plaintiff intends a meaning without connotation of legality of particular acts.'' She further stated that the State Controller and the State Treasurer were made parties only in their official capacities, but that the others were made parties in both their individual capacities and in their capacities by way of their offices.

■ It is settled law that the defense of sovereign immunity from suit presents a jurisdictional question; that the state may not be sued without its consent. (*People* v. *Superior Court*, 29 Cal.2d 754, 756-757 [178 P.2d 1, 40 A.L.R.2d 919] ; *McPheeters* v. *Board of Medical Examiners*, 74 Cal.App. 2d 46, 49 [168 P.2d 65].) ■ This immunity protects public officers and employees acting within the scope of their duties, even against charges of malicious personal torts, such as libel, slander, and false prosecution. (*Rauschan* v. *State Compensation Ins. Fund*, 80 Cal.App. 754 [253 P. 173] ; *Gould* v. *Executive Power of the State*, 112 Cal.App.2d 890 [247 P.2d

424] ; *White* v. *Towers*, 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636] ; *Hardy* v. *Vial*, 48 Cal.2d 577 [311 P.2d 494] ; *Gregoire* v. *Biddle*, 177 F.2d 579.) The State Personnel Board is charged with the responsibility of administering the civil service system. Its executive officer and his assistant are charged with performing and discharging under the direction and control of the board, the board's powers, duties, purposes, functions and jurisdiction as the same may be delegated to him by it. (Gov. Code, § 18654.) The board, its executive officer and employees are generally charged with the process of selecting and inquiring into the qualification of employees hired by the state as public employees and members of the state civil service. (Gov. Code, § 18931.) █ This section, among other things, requires the board to establish qualifications for determining fitness of employees for each class of position; for temporary appointment and for applicants for examinations. For such purposes, inquiry may be made of people generally having knowledge of the applicant as the good of the service may require.

█ The complaint herein, as amended, charges that the board, its executive officer and its employees inquired of Tustin for information concerning plaintiff, who had made an application for examination for public employment. In doing this, they clearly were acting within the scope of their required duties. Tustin, a public official of Santa Clara County, replied by the letter hereinbefore referred to, and the others made that letter part of plaintiff's file in the records of the Personnel Board. Plaintiff alleges that these acts were all performed in the exercise of official duty and her amendatory allegations wherein she sought to avoid the defense of immunity were insufficient to accomplish that purpose. Thus, after alleging that Tustin was acting within the scope of his employment, she added that his acts were without lawful authority. This addition merely argues that although it was a matter within the scope of his employment to give information concerning plaintiff, yet the manner was such as to destroy immunity. As said by the court in *Hardy* v. *Vial*, *supra*, page 583 :

". . . Plaintiff contends, however, that the school defendants are not entitled to the protection of the immunity rule because they assertedly acted beyond the scope of their employment when they conspired with the nonschool defendants and aided them in making and filing affidavits containing false charges. It should be noted in this connection that 'What

is meant by saying that the officer must be acting within his power [to be entitled to immunity] cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.' "

If, as alleged, Tustin was acting within the scope of his employment by Santa Clara County, his asserted tortious conduct did not destroy his immunity.

 Now taking up Fisher and Bell and the members of the State Personnel Board, not only is it alleged that they all acted within the scope of their employment, but the facts pleaded demonstrate that even if the allegation were not made or if a contrary allegation were made it was clearly their duty to investigate as they did and to inquire for information as they did and, having obtained it, to make it available to those who were to thereafter act upon the matter of plaintiff's qualifications. To say of Fisher and Bell and the members of the board that, although acting in the course of their employment, they were acting without lawful authority and under color of state authority, is to detract nothing from the allegation supported by the pleaded facts that they were acting within the scope of their employment and therefore entitled to immunity, even though, as alleged, they were guilty of tortious conduct. Neither did plaintiff's attempt by amendment to further define her use of the term "scope of employment" serve to destroy immunity, for she says she intended "a meaning without connotation of legality of particular acts." But if they were acting in the course of their employment, as we have said, it matters not whether the pleader used the term with or without a connotation of legality of particular acts. Immunity is not needed if the acts be legal, and if illegal it protects if the act be done in the course and scope of employment. Likewise ineffective was the amendatory matter added to the original pleading that Tustin, Fisher, Bell and members of the board were made parties to the action in both their individual capacity and their capacity as officers. Only one set of allegedly wrongful acts was pleaded and if such acts were done within the scope of employment the actors were immune.

We hold that under the state of the pleadings as finally amended no cause of action was stated against the several defendants, who are respondents here; that in view of the fact that this defect in the pleading was pointed out with

respect to the first complaint and that the repeated leaves given to amend did not result in a curing of these defects it was proper for the trial court to refuse further leave to amend. In view of what has been said it is unnecessary to discuss the further well-taken grounds for special demurrers which likewise, on leave to amend granted, were not disposed of by the amendments.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied December 10, 1958, and appellant's petition for a hearing by the Supreme Court was denied January 7, 1959. Carter, J., was of the opinion that the petition should be granted.